Case No. 20-1031, et al. The American Bottling Company doing business as Couric-Dr. Bepper Petitioner v. National Labor Relations Board. Mr. Franklin for the petitioner, Mr. Seid for the respondent. Mr. Franklin, please proceed when you're ready. Thank you, Your Honor. May it please the Court, my name is Corey Franklin and I represent Petitioner Cross Respondent American Bottling Company in this test of certification case. For the sake of clarity, I will refer to my client as the employer, to the respondent cross petitioner as the NLRB or the board, and the intervener as the union. The employer manufactures, sells, and distributes beverages. This case concerns its operations in North Lake, Illinois, outside of Chicago. On June 4, 2019, the employer held a meeting with the individuals it employs as its frontline sales force, who hold the job titles account managers and sales service representatives. Sometimes these are abbreviated as AMs or SSRs, as it may be. I'll try to be specific, but if I lapse into abbreviations, I apologize in advance. In this meeting, the employer stated that it would be implementing a previously announced fundamental alteration to the manner in which it conducts its sales operations in the Chicago market. This change is called a reroute, and that this reroute would occur on July 21, 2019. Additionally, consistent with a previous description of this reroute process, the employer advised that the implementation would also result in the permanent elimination of the sales service representative or SSR position on July 21, 2019. Seven of those individuals would be offered positions as account managers, but the remaining 28 sales service representative positions were eliminated. This case arose because very shortly after this meeting, the union filed a petition for a secret ballot election. They filed this on June 14, 2019, and seeking to represent a voting unit putatively comprised of 33 account managers and 35 sales service representatives whose positions, again, would be eliminated under the reroute. The employer at the evidentiary hearing concerning the petition argued that the board's shrinking unit or contracting unit doctrine required the board's regional director to dismiss the union's petition because the July 21 reroute would result in the elimination of a position held by over half of the employees at issue. At the hearing, the employer presented unrebutted evidence regarding the substantial planning and preparation already completed, customer coordination, and communication with employees already undertaken to ensure a smooth implementation of this fundamental change to its sales operations in the Chicago market. Most importantly, the uncontroverted evidence established that the employer would implement this reroute and eliminate the sales service representative position on a date certain, July 21, 2019. Notwithstanding this unrebutted evidence, the board's regional director somehow concluded that the employer failed to show definite evidence of a contracting unit and directed an election to be held on July 12, 2019, in a unit comprised of full-time and regular part-time account managers and sales service representatives. In the light of the regional director's prior conclusion that the reroute implementation would not definitely occur on July 21, the employer's representative at the election notified the board agent administering that election that the reroute would indeed proceed on July 21 as designated, and the employer wanted to challenge the balance of the SSRs who cast ballots. If the regional director believed the reroute's implementation was speculative, the employer's confirmation of on the date of the election that the implementation would proceed mere days ahead should have constituted a change in circumstances, justifying the application of the time honored challenge ballot procedure. Ignoring procedure, however, the agent declared at the pre-election conference that she would not consider any ballot challenge to a ballot cast by an SSR, and consistent with her declaration, she refused to follow the challenge ballot procedure with respect to ballots cast by SSRs, despite timely objections during the course of the election by the employer's observer. After the polls closed, employees who both supported and opposed the union attended the tally of ballots conducted by the agent. The union and or its agents photographed and videotaped these proceedings in contravention of well-established policy. When the agent noticed this conduct, she took no affirmative action. She simply said, oh, well, and ignored her obligation to preserve and protect the section seven rights of the employees who attended the tally of ballots. The employer's argument is threefold. First, the board erred in affirming the regional director's decision in direction of election. Simply stated, the board's decision does not rest on any evidence, let alone substantial evidence. The regional director, in issuing his decision in direction of election, relied on the fact that there had been a prior announcement in March of 2019 of the reroute. Due to labor relations issues involving the same union, namely the threat of a strike during the course of contract negotiations that were pending that involved the sales warehouse, where the product these individuals would sell was involved, the employer pushed off the date to the next earliest available date after consultation with its customers, which was July 21. Is that the date it was locked in? Yes. Okay. Isn't that some evidence? You clearly had a date that was locked in, sure to happen. Locked set in stone it was happening, is the quote. Yes. It was day 41, and you had sent out letters, payroll letters, notifications to customers, and all that paperwork, and then it didn't happen. It did not. And I can tell you- You said there was no evidence on which they could conclude that even when you said something was expected to happen on a date, it might not happen. It seems to me there certainly is some evidence. Wouldn't you agree that's at least evidence? I would say much like- Would you agree that it's evidence? No, I would not. Would you agree that that's evidence of whether expected deadlines are always met in this context? I would characterize that as a set of circumstances that the employer was forced to contend with. However, it didn't reissue any additional paperwork. It didn't go through another round of rejiggering this process. It applied the process that it communicated to its employees that it was going to proceed with. And indeed, they took it seriously enough that they filed a petition for election because they apparently were displeased with it. So they took it seriously when the union- I have a question. Even if you were right that it was imminent, direct and imminent, I'm sorry, imminent and certain, election can go forward as long as the- even after the contraction, the proposed unit will be substantial and representative. Okay. And let me finish my question, please. And at least Member McFerrin spelled out the math, did the math for me because I'm not that good at math. And I saw nowhere in your brief any dispute of the question whether there were a substantial and representative number of employees would remain even after the contraction. No dispute of that math, of that legal rule, or of that math. Am I right that you nowhere in your briefs disputed the existence of that legal rule or that math? So I would refer the court to our reply as we address the issue of the substantial- and representative complement issue. The bigger focus though, Your Honor, is that that was- Where in your reply brief are you referring to? I'm sorry. I apologize. As I flip through this, it may be in our principal brief. I apologize. All right. Well, maybe you can just tell us on rebuttal. I don't want to waste your time right now. Ultimately, however, Your Honor, Member McFerrin's footnote is the first time that's ever raised by anyone. And it was never raised by the regional director. The regional director had a laser-like focus on whether there was evidence of a direct and imminent contraction of the unit. He ignored any evidence that we proffered. It was unrebutted and chose instead to go on his own subjective impression of what the unrebutted evidence and testimony at the hearing meant. And instead of- Let me understand how this test works. You have the burden here. Correct. And even assuming you were right on showing imminent and certain, is it your burden to show also that after the contraction, there would not be a substantial and representative contingent of employees remaining? Our burden- There are three factors that the board looks to determine whether there's sufficient evidence of unit contraction to warrant dismissing the petition for an election. The time period between the representation, the RC hearing on the petition and the expected contraction, the steps taken by the employer to effectuate the change, and whether the employees have been notified. And that all goes to imminent and certain. So what I'm saying is assume- That's what you focused your argument on here. I got that. But it seems to me to end or terminate or prevent a union election, there has to be more than just a contingent of employees. There also has to be, because the election will still go forward, even with that imminent and certain contraction, if a substantial and representative contingent of employees remains. And so what I'm asking you is, do you have to show both of those things to show that the election should not have gone forward? That's not our belief. One. And two- Whose burden is it? So is it the general counsel's burden to come back and show- I think it's the burden of the union at the RC hearing to demonstrate that there's a substantial and representative complement of employees that remains. Is there board case law, case law in this court, if I've missed it, that says who has the burden of showing, if the person trying to stop the election, do they have the burden of showing both prongs of that test, or whether it's like the burden shifts to the union once certain and imminent is shown? I'm just trying to figure out that you have an obvious reaction and you're a much more expert in this area than I am. So I'm just trying to understand where that comes from. I don't have that before me. Even assuming for purposes of argument that the employer were to hold that burden, the fact remains that the facts, the unrebutted facts in the record at the representation hearing support the proposition that over half of the of the putative unit would be eliminated and an entire job classification of only two job classifications in that petition for unit would be would be eliminated and- And seven, I've got the number right, I think it was seven individuals were going to be converted to people that were still within the unit. Correct. Okay. Okay. Well, why isn't that enough? If that's, if you're, can you hear me? I'm sorry, I'm making sure that I'm audible. I hear you. Yeah. If, if you agree on the seven, which that, that is what was reflected in the materials, then why isn't that enough? Because I thought the math worked out so that that would be enough. So when you, when you look at the count, the count 62 ballots were passed because the challenge procedure was not employed. We had all of the, none of the ballots were segregated by voter. So we don't know who voted, had the challenge process been followed. We would know whether this, whether a substantial and representative compliment voted or, or, or whether or not the, the process played out in such a way as to just to be actually representative of the unit. I thought the whole point of the way the math worked out was that it didn't matter because we know from just the existence of the seven that even if you allocate everybody into one category, it's still going to work out so that substantial and representative is, is met. From, from the, from the employer's position. Again, that was never, that was never the argument raised by the board and it's, and it's not the ruling under review, the ruling under review that was affirmed by the board and the, and only you have one footnote by member McFerrin that raises this issue. The sole and exclusive basis for the, for the, for the board's because I thought the way the numbers worked out just dealt with this. If you haven't, and if, do you have an answer actually on the math that says that because there are seven who are still, even though the position is eliminated, they're still going to remain within the unit, but that's not enough. If you don't have an answer, that's fine, but I've just, I want to make sure that I understand whether there is actually a math answer. We don't, we don't view this, our argument or our case as a function of the math problem. And I don't, that mean you don't dispute the math. No, I I'm, I'm saying that, that the, the math wasn't the basis for the ruling. And just asking you, I think we're just asking you this factual question here from the record. Member McFerrin did the math. I didn't see anything where you disputed it. And that could be, I missed it. I'm sorry, chief judge, I'm going to step on your question. I'm just trying, at least I think you're asking, I hope you're asking the same question. I just want to know, do you dispute the math? I don't, I don't dispute that there are a grand total of 40 bargaining unit employees. Once an appropriate unit has been defined, but allowing 68 employees to be eligible to vote for a 40 employee unit makes, makes no sense in this context and allows, allows individuals who have no reasonable expectation whatsoever of being employed in the unit, determine the representative representational status of the remaining employees. My colleagues don't have any further questions for you at this point. Maybe we'll hear from the board. Mr. Seid. Good morning, your honor. Please support David Seid for the labor board. The board acted in its broad discretion by declining to dismiss the election petition because it reasonably found at the time of the pre-election hearing, the company failed to carry its burden of establishing that it would eliminate the SSR position during the week of July 21st, 2019. Rather, for essentially four reasons, the board found that target date is aspirational. First, the board looked at the history and the history doesn't just have one occasion where the company failed to meet a target date, but three occasions. And this was a process that started all the way back in November of 2017. And during that time period, the company failed to carry out its plans, notwithstanding it indicating that at various points it was immersed in its plans, that it finalized its plans. And it's no surprise because the company itself acknowledged both in its brief and at the hearing that this was a very arduous and difficult process that involved a lot of planning. Second, the board relied on the email that a vice president sent on June 4th, 2019. In that very email, the vice president referred to the week of July 21st as merely a target date. And it also referenced about coordinating the elimination of the SSR position with another change that had to take place regarding the bulk route drivers. And the email expressed concern that both of those had to occur at the same time or otherwise it wouldn't be fair to either the employees or the customers that would be affected by the changes. Yet, as the board noted in the regional director's decision, three weeks later when the pre-election petition hearing was being held, there was no update regarding that June 4th email. What was going on? There was no reply from other executives. There was no indication of what's going on with either the SSR change or the change that's supposed to be taking place with the bulk delivery drivers. And it's the company that controls the decision-making process, and it certainly had ample opportunity at the pre-election hearing to do more than introduce simply one email from June 4th to indicate what exactly was going on and when it was happening. Third, the board reasonably relied on the fact that less notification was provided with respect to the week of July 21st when compared to other time periods that had been announced by the company. For example, there was no evidence that letters were sent to employees, nor for that matter was there even evidence that the customers had been notified. And then finally, the board also considered that there was no evidence that the master data could be completed. And I would like to touch on this because the company in its brief makes reference referring to testimony from pages 84 and 85 of the appendix that area manager Troutman had indicated that the master data was complete even as of April 1st and that it was simply basically a matter of touching the button and it would all be done on July 21st. However, earlier in his testimony at pages 73 and 74 of the appendix, it indicated that one of the reasons why the change didn't take place on April 1st and couldn't even take place by May 1st was that even if certain issues got resolved regarding some bargaining issues with some other representative employees that the company would be unable to complete the master data switch, not only not being able to do it by April 1st, but also not being able to do it even by May 1st. And so it's within the context of basically these four factors that the board was fully warranted to find that at the time of the representation hearing, the company failed to carry its burden that would eliminate the SSR position during the targeted week of July 21st, 2019. One other point raised by the company with respect to its post-election objections, it's well settled that with respect to post-election objections, that an employer cannot re-litigate the eligibility of voters to vote outside of being able to show that there were changed circumstances. And the only thing that was offered in a attached affidavit or statement was simply that, well, it's going to happen on July 21st. Again, we're now nine days away from the target date of this happening, and yet the company didn't produce any records, any emails, anything. Can I interrupt and ask, is your position that it wasn't clear that the reroute would ever happen, or is your position just it wasn't clear that the reroute would happen on July 21st? Your Honor, the board's position is that the company failed to carry its burden at the time of the pre-election hearing that it would take place during the week of July 21st. The board is not disputing that as early as late 2017, it announced an intent to want to do this. At the time that the ruling was made, the thought was the company has not proven this will happen on July 21st. Had the company proven that it would happen within, let's say, six months of July 21st? I lost your audio. I don't know if you lost it. Your Honor, for a second, but I think I did hear your question. Are you still able to hear me? Yes. Okay. So the board hasn't definitively stated a time frame for when it would consider an imminent contraction. Generally, in a number of the cases, the board has made a determination within about four months of the time of a pre-election hearing. So that would be imminent enough? In general. In this case, did the board conclude that the company had not demonstrated that the reroute would happen within four months? Your Honor, the board didn't need to specifically state that because the company's position before the board was not that it would happen sometime, say, between July and September or October, but it was specifically that it would happen the week of July 21st. So that's what the board is considering. The company wanted to make an argument that, well, we're aiming for July 21st, but here are three different reasons why it may not happen until September 1st, but here's why that would be the drop dead date, so to speak. It could have done so and the board would have obviously evaluated the facts. I get that it's the company's burden to show that it's imminent, but if the company has the board that it's imminent, imminent being defined as within four months, then isn't that the question the board has to answer or the regional director has to answer? Your Honor, given that there's been delays dating back to early 2018, the board is considering the specific claims that were raised by the employer. The employer, in fact, the employer criticizes the board for relying on the July 21st date. That's a date that the company kept saying it was going to happen. The board actually, if going back to the regional director's decision, actually considered the week of July 21st, which was actually the target week that was set forth in the vice president's letter on June 4th. So the board doesn't directly have to consider that it might have happened at a later week or even a month later. It needs to consider what is the argument being raised by the employer at the pre-election hearing. And what's your response to, or remind me a response to, this tension between what the board did here and what the regional director did in the unfair labor case where the regional director found as a finding a fact that the company had made the date of the union election? Sure. Putting aside that it's an unrelated issue, that it's also a decision by the general counsel whether or not to issue a complaint, which is not a board decision. But also the question, the board isn't disputing that there is a decision made going all the way back to 2017, that there was a decision made at some point in time to eliminate the SSR position. But there's a difference between saying that there's a desire or an intent at some point in time to eliminate the SSR position, or that decision was made before the election was held, and being able to carry a burden at the pre-election hearing of setting forth a specific time frame that is definite and imminent for that change to take place. Okay. Is it the employer's burden, or is it otherwise, to show not just the changes, contraction is certain and imminent, but that that is a, it will be a material contraction, and that it will no longer, there will no longer be a substantial and representative unit, or if they show imminent and certain contraction, does the burden shift to the that a substantial and representative contingent will remain? Your Honor, I see that my time is up. I presume I can answer the question. It wouldn't be the general counsel's burden, because at a pre-election hearing, the two parties would not, I'm sorry, it would not be the general counsel's burden, because at a pre-election hearing, the two parties are the union and the employer. I'm not aware in any of the cases where the board has explained the representative complement principle. It has specifically discussed whether it is on the burden of the employer or the union, but very clearly, it is the second part of the test that even if an employer does show that there is a definitive and imminent date to make a change, that nonetheless, a representative complement wouldn't remain. And here, there is no dispute, as Member McFerrin said. It's like if they came and said there's a certain and imminent contraction of one employee, and they had the best evidence in the world of certain and imminent, no one would think they had done anything to show that the election couldn't go forward, assuming the one person wasn't going to change that. I'm not so sure about, that's one way of thinking about it, but that may not be the right way, and it's the board's test, so that's what I'm trying to say, is that if at least 50% of the employees would remain, and at least half of the classifications would remain, and in here, as Member McFerrin did the math, there would be at least 58% of the petitioned for unit would remain, because you have not only the 33 account managers, but you have admittedly seven of the SSRs that would transfer over into account manager positions, so that would be 30 out of the 68 employees in the petition for a unit, or 58%. So under the board's standard, in cases where it has applied this principle, it is over 50%, as Member McFerrin stated. But is it 50% of the threshold? I thought it was, maybe I'm misremembering, it was 50% of classifications, but I thought it was a different number on, was it 30% on the? I apologize, Your Honor, I think I might have misspoken. I think it was, it may have been, and it may be, it was 50% of the classifications, and it may be 30% of the employees. I think that's correct, Your Honor, I apologize. Okay, if the clerk has no further questions, the board will hear from, thank you, Mr. Seib. Thank you, Your Honor. Mr. McFerrin, minutes for your rebuttal. Thank you. A couple of points need to be touched on. One, this notion of the fact that the board, on the one hand, wants to concede that it could have been within a week, but, and then in the decision direction of election, focuses on a date certain. We provided evidence of a date certain, and they decided that it wasn't going to be enough evidence, even though it was totally unrebutted. And ultimately, the reroute did proceed, notwithstanding the emails that they believe that we should be using to run our business were not present. The unsupported argument to the contrary, the employer did not repeatedly delay the implementation of the reroute. It had planning. The only announced reroute to employees was one that had a date certain, was the April reroute. And that April reroute was postponed because of the potential for a strike. And does that matter to the certain and imminent tests? What the cause is? Does it have to be an employer based cause? No, I wouldn't. But it's matters outside of our control. And that again, does that matter for purposes of can the board say, I believe you that that was your intent. But the last five times in a hypothetical case, some external factor kept it from happening, it just, it just seems to be jinxed, it never happens. That I presume it can take that position. But on the facts, what occurred here was that all of the work and contrary to my to my counterparts, representations, otherwise, all the work was done, the only thing that needed to happen was for the date to pass. And yes, you couldn't do it the next if you told me that we were going to run a reroute tomorrow, I couldn't push a button and make it happen tomorrow. But when you have a date certain and a date certain pick, and all the work has been done, and as it was done, as the record shows, by July or by June 25, the parties were in a position, excuse me, the employer was in a position to execute. April one was the only date that was specifically given hard date certain that was given to employees prior to this intervening incident that required us to push it to July 21. And the July 21 date was picked after consultation with customers and consultation with the rest of the business to make sure that could be effectuated properly, notwithstanding any other issues. And that was indeed the date that was that it was effectuated. Again, this, the, the issue of the couple, the substantial representative compliment. Again, that was never the basis for the board's decision in this case. And the focus, although esoterically interesting, as a matter of law, is not is not the the decision under review, the decision under review, is whether the employer established a definite date for the reroute, because that's what the regional director premises decision on. And aside from a straight footnote by a member in the minority on the on the National Relations Board. That's not what they she wasn't in the minority. She agreed. The Democrat Republicans, but I apologize. Uh, ultimately that that was not the basis for the decision under review. So to the extent that we're compelled to answer to the arguments raised, uh, underlying by the board, the argument that they raised was that the date certain wasn't established, notwithstanding the fact that the unroboted evidence established that not, not just July, not just June, not just sometime this spring, a specific date certain was identified and testified to over and over and over again, without any contradiction by I think we have my point, I think we have your argument on that point. Let me just make sure my colleagues don't have any further questions. If they don't, thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Walker